982 So.2d 26 (2008)
Stuart A. SLOBAN, Appellant,
v.
FLORIDA BOARD OF PHARMACY, Appellee.
No. 1D07-0346.
District Court of Appeal of Florida, First District.
April 3, 2008.
Rehearing Denied May 19, 2008.
*28 Katherine E. Giddings, Martin R. Dix and Nancy C. Wallace of Akerman Senterfitt, Tallahassee, for Appellant.
Bill McCollum, Attorney General; Garnett W. Chisenhall and Reginald D. Dixon, Assistant Attorneys General, Tallahassee, for Appellee.
THOMAS, J.
Appellant appeals the Board of Pharmacy's final order denying his petition to initiate rulemaking in which he sought to require the Board to establish reapplication rules for pharmacists whose licenses have previously been revoked. To address whether the Board properly denied Appellant's petition requires us to construe section 456.072(6), Florida Statutes (2006). In doing so, we agree with Appellant that section 456.072(6) is unconstitutional as an unauthorized delegation of legislative authority, in violation of the separation of powers requirement contained in Article II, section 3 of the Florida Constitution. Section 456.072(6) purports to grant the executive branch the authority to make *29 fundamental and primary policy decisions which can only be constitutionally rendered by the legislature, which is elected to perform those tasks. Chiles v. Children A, B, C, D, E & F, 589 So.2d 260, 266 (Fla.1991).
In our opinion, we first summarize the relevant facts and procedural history, then analyze the separation of powers' requirement in our state constitution, along with section 456.072(6) and the relevant cases which compel our decision here.

Facts and Procedural History
Appellant's pharmacy license was permanently revoked by the Board in 1997 following his criminal convictions for federal offenses related to the practice of pharmacy. Appellant was sentenced to six months' imprisonment, which he successfully completed. In 2003, Appellant applied to take the pharmacy examination to become relicensed. The Board denied his application, stating that it had permanently revoked his previous license and had not adopted rules permitting a formerly licensed pharmacist to apply for relicensure.
Appellant then filed a petition to compel the Board to adopt a rule allowing his reapplication for licensure, under section 120.54, Florida Statutes (2006). Appellant acknowledged that section 456.072(6) purports to allow the Board the option to adopt reapplication rules, but he asserted that the legislature cannot delegate this much authority to the Board without providing legislative guidance. Thus, Appellant argued, section 456.072(6) cannot be read permissively, but must be read to require the Board to adopt reapplication rules, or it is unconstitutional as an unauthorized delegation of legislative authority. After a hearing, the Board denied Appellant's petition.

Constitutionality of Section 456.072(6), Florida Statutes (2006)
Article II, section 3 of the Florida Constitution creates three branches of government and prohibits one branch from exercising the powers of the other two branches:
Branches of government.-The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
The Florida Supreme Court has repeatedly held that this constitutional provision requires application of a "`strict separation of powers doctrine . . . which `encompasses two fundamental prohibitions.'" Fla. Dep't of State, Div. of Elections v. Martin, 916 So.2d 763, 769 (Fla. 2005) (quoting State v. Cotton, 769 So.2d 345, 353 (Fla.2000), and Chiles, 589 So.2d at 264). The two fundamental prohibitions are that, first, no branch of government may encroach on another branch's power. Chiles, 589 So.2d at 264. The second is that no branch may delegate its constitutionally assigned powers to another branch. Id.
The second of these fundamental prohibitions, known as the nondelegation doctrine, is at issue here because the statute before us purports to grant excessively broad discretion to an entity of the executive branch. As the supreme court has noted, the legislature possesses the constitutional power to transfer subordinate functions to "permit administration of legislative policy by an agency with the expertise and flexibility to deal with complex and fluid conditions." Microtel v. Fla. Pub. Serv. Comm'n, 464 So.2d 1189, 1191 (Fla.1985) (citing State, Dep't of Citrus v. Griffin, 239 So.2d 577 (Fla.1970)). Under the nondelegation doctrine, however, the *30 legislature "may not delegate the power to enact a law or the right to exercise unrestricted discretion in applying the law." Sims v. State, 754 So.2d 657, 668 (2000). Further, the nondelegation doctrine precludes the legislature from delegating its powers "absent ascertainable minimal standards and guidelines." Dep't of Bus. Reg., Div. of Alcoholic Beverages & Tobacco v. Jones, 474 So.2d 359, 361 (Fla. 1st DCA 1985). As the supreme court stated in Martin:
In other words, statutes granting power to the executive branch "must clearly announce adequate standards to guide . . . in the execution of the powers delegated. The statute must so clearly define the power delegated that the [executive] is precluded from acting through whim, showing favoritism, or exercising unbridled discretion."
916 So.2d at 770 (quoting Lewis v. Bank of Pasco County, 346 So.2d 53, 55-56 (Fla. 1976)). When a statute lacks adequate guidelines, courts cannot determine if the agency is carrying out the legislative intent. Askew v. Cross Key Waterways, 372 So.2d 913, 918-19 (Fla.1978).
To determine whether a violation of the nondelegation doctrine has occurred, we must evaluate section 456.072(6), Florida Statutes (2006), which states:
If the board . . . determines that revocation of a license is the appropriate penalty, the revocation shall be permanent. However, the board may establish by rule requirements for reapplication by applicants whose licenses have been permanently revoked. The requirements may include, but are not limited to, satisfying current requirements for an initial license.
By providing the Board with the discretion to enact reapplication rules, the legislature has impermissibly given an administrative agency the authority to declare what the law shall be, as the Board alone may decide whether an entire group of formerly licensed professionals shall be permitted to reapply. Cf. Sims, 754 So.2d at 669-70 (finding law was not unconstitutional because it clearly fixed the penalty to be imposed, delegating only the details of carrying out the execution to the department). Further, section 456.072(6) provides no standards or guidelines regarding when the Board should exercise its discretion to establish reapplication rules.
Accordingly, section 456.072(6) constitutes an unauthorized delegation of legislative authority. See Martin, 916 So.2d at 771 (declaring a statute unconstitutional because it fails to delineate any standards or guidelines to guide the Department in exercising its discretion granted under the statute). Similar to the statute at issue in Martin, which did not articulate any factors the Department should consider when deciding whether to permit a candidate's withdrawal after the 42nd day, section 456.072(6) fails to articulate any standards regarding whether the Board should institute rulemaking to develop reapplication rules.
We find the Board's reliance on the exceptions to the nondelegation doctrine to be unpersuasive, as section 456.072(6) does not implicate the Board's licensing or disciplinary decision pertaining to an individual applicant, and it does not require a case-by-case review of a fluid and complex subject. See Jones, 474 So.2d at 361; A.A. v. State, 605 So.2d 106, 107 n. 2 (Fla. 1st DCA 1992) (Ervin, J., concurring). Further, while Judge Ervin stated in A.A. that the exceptions have largely swallowed the rule, where, as here, the statute gives an administrative agency the authority to enact the law, the supreme court has not hesitated to declare the law unconstitutional *31 as a violation of the nondelegation doctrine. See Martin, 916 So.2d at 767.
In Jones, we addressed whether a statute authorizing an administrative body to reduce the disciplinary penalty given to a state employee was unconstitutional under the nondelegation doctrine. 474 So.2d at 363. We found that it was not, explaining that the legislature may delegate some discretion in the operation and enforcement of the law, but it cannot delegate the power to say what the law is. Id. Unlike the statute at issue in Jones, section 456.072(6) grants unbridled discretion to the Board to determine the professional fate of a group of persons, not the limited discretion to determine whether an administrative punishment is too severe.
Unlike the situation in Florida League of Cities, Inc. v. Administration Commission, 586 So.2d 397 (Fla. 1st DCA 1991), we cannot agree that the impracticability exception applies, making it impractical for the legislature to provide constitutionally mandated guidance to the Board to determine under what circumstances it should allow a person whose license has been permanently revoked to reapply.
Because none of the exceptions to the nondelegation doctrine apply here, we find that the second and third sentences of section 456.072(6) vesting unbridled discretion in the Board are unconstitutional. Having found this portion of the statute unconstitutional, we must now address whether the valid portion of it can be severed from the invalid portion.

Severability
Although section 456.072(6) contains no severability provision, we must determine whether the constitutionally invalid section, which purports to grant the Board the discretion to develop reapplication rules, is severable from the rest of the statute. See Dade County v. Keyes, 141 So.2d 819, 821 (Fla. 3d DCA 1962) ("When a portion of a statute or ordinance is declared invalid the remaining portions thereof which are severable ordinarily should be recognized as valid, and it is the duty of the court to preserye their validity whether or not a severability clause was included."); see also Ray v. Mortham, 742 So.2d 1276, 1280 (Fla.1999) ("Severability is a judicial doctrine recognizing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions.").
"The severability of a statutory provision is determined by its relation to the overall legislative intent of the statute of which it is a part, and whether the statute, less the invalid provisions, can still accomplish this intent." E. Air Lines, Inc. v. Dep't of Revenue, 455 So.2d 311, 317 (Fla.1984). In Cramp v. Board of Public Instruction of Orange County, 137 So.2d 828 (Fla.1962), the supreme court explained the four-part test that courts must apply in determining whether a portion of a statute which is declared unconstitutional may be severed from the rest. The remainder of an unconstitutional statute will stand if: (1) the unconstitutional provisions can be separated from the valid provisions; (2) the legislative purpose of the statute can be accomplished independently of the void provisions; (3) the good and bad features of the statute are not so inseparable that it can be said that the legislature would have passed one without the other; and (4) the act remaining after the invalid provisions are stricken is complete in itself. Id. at 830. "The important factor to be considered when determining whether valid and invalid provisions are separable and essential is legislative intent." State v. Tirohn, 556 So.2d 447, 449 (Fla. 5th DCA 1990) (citing Limpus v. Newell, 85 So.2d 124 (Fla.1956)). When the valid sections can accomplish the legislature's intent *32 without the invalid portions, the statute is severable. Id.
Were we to sever the first sentence from the remainder of the statute here, section 456.072(6) would state: "If the board . . . determines that revocation of a license is the appropriate penalty, the revocation shall be permanent." Although this sentence can be separated and will be a complete act in itself, the second and third prongs of the test, relating to legislative intent, demonstrate that section 456.072(6) is not severable.
In 1992, the legislature amended section 455.227, Florida Statutes (1992), by adding the provision at issue as section 455.227(4), Florida Statutes. See ch. 92-149 § 22, Laws of Fla. (1992). This provision later became section 456.072(5), Florida Statutes (1997), now numbered as section 456.072(6). See ch. 97-261 § 69, Laws of Fla. (1997).
In Martin, the supreme court considered whether section 101.253(2), Florida Statutes (2004), was unconstitutional. 916 So.2d at 771-73. Section 101.253(2) stated,
No candidate's name, which candidate is required to qualify with the Department of State for any primary or general election, shall be printed on the ballot if such candidate has notified the Department of State in writing, under oath, on or before the 42nd day before the election that the candidate will not accept the nomination or office for which he or she filed qualification papers. The Department of State may in its discretion allow such a candidate to withdraw after the 42nd day before an election upon receipt of a written notice, sworn to under oath, that the candidate will not accept the nomination or office for which he or she qualified. (Emphasis supplied.)
Id. at 767. The court concluded that the second sentence of section 101.253(2) violated Article II, section 3; therefore, section 101.253(2) was unconstitutional. Id. at 773. Considering its severability next, the court held that the unconstitutional portion of section 101.253(2) could not be severed from the rest because this would permit a candidate's withdrawal only if it were received on or before the 42nd day. Id. at 773-74. After the 42nd day, withdrawal would not be permitted under any circumstances. Id. at 774. The court reasoned that this result was inconsistent with the legislature's clear intent to permit withdrawal under some circumstances. Id.
Similarly, we have determined that the second and third sentences of section 456.072(6) violate Article II, section 3; therefore, section 456.072(6) is unconstitutional. As in Martin, we conclude that by including the second and third sentences in section 456.072(6), the legislature has clearly indicated its intent that reapplication should be permitted in some circumstances. If the legislature intended that revocation would forever disqualify a person from reapplying for a license, it would not have included the second and third sentences. See State v. Goode, 830 So.2d 817, 824 (Fla.2002) ("[A] basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless."). Further, permitting reapplication in some instances is consistent with the general legislative intent that regulation of the medical professions is limited to the extent necessary to protect the public without unduly restricting those who wish to practice. See § 456.003, Fla. Stat. (2006).
Additionally, it cannot be said that the legislature would have passed the first *33 sentence without the second and third sentences, as this would require the assumption that the second and third sentences are merely surplusage. See Hechtman v. Nations Title Ins. of NY, 840 So.2d 993, 996 (Fla.2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage."). The two sentences at issue are important, as this language demonstrates the legislature's intent to allow reapplication in at least some circumstances. Therefore, we find that the good and bad features of the statute are not separable, as it does not appear that the legislature would have passed the first sentence without the rest.
Because we do not find section 456.072(6) severable, we must consider whether another interpretation of the statute can avoid holding it unconstitutional.

Interpreting "May" as "Shall" in Section 456.072(6), Florida Statutes (2006)
Courts have an obligation to give a statute a constitutional construction when this is possible. Tyne v. Time Warner Entertainment Co., 901 So.2d 802, 810 (Fla.2005). Appellant argues that reading "may" to mean "shall" in the second sentence requires the Board to adopt reapplication rules and cures section 456.072(6) of its unconstitutionality.
The plain meaning of a statute controls unless this leads to an unreasonable result or a result contrary to legislative intent. Jackson County Hosp. Corp. v. Aldrich, 835 So.2d 318, 329 (Fla. 1st DCA 2002); Cherry v. State, 959 So.2d 702, 713 (Fla.2007). Under the plain meaning rule, "may" denotes a permissive term; however, if reading "may" as permissive leads to an unreasonable result or one contrary to legislative intent, courts may look to the context in which "may" is used and the legislature's intent to determine whether "may" should be read as a mandatory term. See Shands Teaching Hosp. & Clinics, Inc. v. Sidky, M.D., 936 So.2d 715, 721 (Fla. 4th DCA 2006); Comcoa v. Coe, 587 So.2d 474, 477 (Fla. 3d DCA 1991); Allied Fidelity Ins. Co. v. State, 415 So.2d 109, 110-11 (Fla. 3d DCA 1982) (rejecting the appellant's argument that "shall" always means "shall").
Here, the context in which "may" is used in section 456.072(6) does not permit us to read it as "shall." Cf. Comcoa, 587 So.2d at 477 (holding that a trial court had no discretion to enter a writ of replevin after finding that the statutory requirements for issuing the writ had been met even though the statute provided that a circuit court "may" issue a writ of replevin, reasoning that based on the context, "may" implied an imperative obligation). Accordingly, we cannot give section 456.072(6) a constitutional interpretation by reading "may" to mean "shall," which would require the Board to adopt reapplication rules.

Conclusion
Because we find that section 456.072(6), Florida Statutes (2006), grants the Board the absolute, unfettered discretion to decide whether formerly licensed pharmacists may reapply for licensure, we hold that the statute is an unconstitutional delegation of legislative authority, in violation of the separation of powers set forth in Article II, section 3. Accordingly, we affirm the Board's order denying Appellant's petition to initiate rulemaking.
AFFIRMED.
POLSTON, J., concurs; HAWKES, J., concurring in part and dissenting in part with written opinion.
*34 HAWKES, J., concurring in part and dissenting in part.
I concur with the majority's determination that the last two sentences of section 456.072(6), Florida Statutes, constitute an unconstitutional delegation of legislative authority. However, I disagree with the conclusion that those sentences are not severable. We are obligated to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions. See e.g., Ray v. Mortham, 742 So.2d 1276, 1280 (Fla.1999). Because I believe the first sentence meets the severability test, I dissent from the majority's decision to strike the entire provision instead of severing the last two sentences.